IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THOMAS A. PALMISANO, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. CCB-09-2554 |
| BALTIMORE GAS & ELECTRIC CO. et al., | * | |
| Defendants | * | |

* * * * * * * * * * * *

**MEMORANDUM**

Thomas A. Palmisano brought suit pursuant to 42 U.S.C. §§ 1981 and 2000e-5(f)(1) against the Baltimore Gas and Electric Company and Constellation Energy Group (collectively, "BGE") for alleged employment discrimination. Both Palmisano and BGE have moved for summary judgment. The issues have been briefed and no oral argument is required. Local Rule 105.6. For reasons explained below, the court will grant the defendants' motion for summary judgment and will deny the plaintiff's cross-motion for summary judgment.

*I. Standard for Summary Judgment*

A court may properly award summary judgment in federal cases when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(c)). The burden is on the moving party to demonstrate the absence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence

1

exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine issue of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to defeat a defendant's motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine issue for trial, Fed. R. Civ. P. 56(e)(2). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Rule 56(e)(1).

## II. Background

### A. Factual Setting

Thomas Palmisano is a Caucasian male. (Compl. ¶ 12.) He began working for BGE in 1978 and, after several promotions, became Supervisor of Meter and Installation in 1995. (Palmisano Dep. 26:7—28:14, Mar. 19, 2010.) In December 2006, Palmisano began dating an African-American female who was employed in a different department of BGE. (*Id.* 53:8-19; Doe Dep. 40:8-17, Apr. 15, 2010.)[1] The relationship evolved to the point where the two were sexually intimate. (Palmisano Dep. 53:18—54:7.) In September 2007, Palmisano and Doe were not agreeing on certain issues; as a result, the two went back and forth in their relationship, but

---

[1] The name of the female deponent is considered confidential information by the parties and is referred to in this memorandum opinion as "Doe."

continued to see each other and to have contact via e-mail and telephone. (*Id.* 54:12—55:4, 58:15-21; Doe Dep. 49:2-12, 54:11-18.)

On February 5, 2008, he and she got into a heated argument over the telephone while she was at work. (Palmisano Dep. 59:1-9, 60:1; Doe Dep. 52:1-17.) Although Doe said that Palmisano threatened to kill himself (Doe Dep. 52:17-18), he denied that and said, in effect, that the things she did were enough to make a person want to go into the woods and shoot himself (Palmisano Dep. 59:10-21). In any event, Doe, believing that Palmisano had said he was going to kill himself, became upset and called her supervisor, who alerted others at BGE as well as the sheriff of the county in which Palmisano was living. (Doe Dep. 59:7-11; Decl. Kline ¶¶ 2-5; Decl. Bender ¶ 8.) The company psychologist interviewed Doe, who told him that Palmisano had created a hostile workplace for her. (Decl. Shipley ¶¶ 3-5.) BGE responded by launching an investigation which included a review of all e-mail messages between Palmisano and Doe for the previous six months. (*Id.* ¶¶ 6-7.) A significant number of those were deemed by the company to be inappropriate personal messages and, specifically, to be messages with sexually explicit content. (*Id.* ¶ 8.) Additionally, Palmisano was found to have sent a sexually explicit e-mail message using his company e-mail account to someone outside of the company. (*Id.* ¶ 9.)

BGE's director of human resources, a senior vice-president, and Palmisano's supervisor agreed to terminate Palmisano for violation of company policies. (*Id.* ¶ 12.) The termination occurred on February 22, 2008. (Defs.' Mot. Summ. J. Ex. 21.) Doe was disciplined by being given a formal warning, being suspended from work for five days without pay, receiving a 5% reduction in her pay, and being placed on probation for twelve months. (Decl. Campo ¶ 4.) She was also severely restricted in her use of the company's telephone and e-mail systems. (Defs.' Mot. Summ. J. Ex. 23.)

### B. Procedural History

Palmisano filed a claim of employment discrimination in July 2008. (Compl. ¶ 8; Answer ¶ 8.)[2]  The Equal Employment Opportunity Commission issued a right-to-sue letter on June 30, 2009. (Compl. ¶ 9; Answer ¶ 9.) Palmisano timely filed this lawsuit on September 29, 2009. 42 U.S.C. § 2000e-5(f)(1). The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

### III. Analysis

Plaintiff has alleged that his termination of employment was based on racial and gender discrimination because he was treated less favorably than Doe and others whom he views as similarly situated employees. (Compl. ¶¶ 27, 32, 38.) Palmisano has not offered direct evidence of discriminatory intent by BGE in its decision to terminate his employment; accordingly, he relies upon indirect proof to establish his case, which must be analyzed under the "burden-shifting" framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998).

Under *McDonnell Douglas*, a plaintiff can establish a prima facie case of employment discrimination by showing four elements: (1) he is a member of a protected class; (2) he performed his job duties in a satisfactory manner; (3) he was subjected to an adverse employment action; and (4) he was treated differently from similarly situated individuals outside of his protected class. 411 U.S. at 802; *White v. BFI Waste Services, LLC*, 375 F.3d 288, 295 (4th Cir. 2004). If the plaintiff establishes a prima facie case, then the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for its decision. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000). Should the employer satisfy this

---

[2] Plaintiff has indicated that the entity with which he filed his charge was the Baltimore Community Relations Commission, while the defendants state that the charge was filed with the Equal Employment Opportunity Commission ("EEOC"). Regardless, the claim was timely filed pursuant to 42 U.S.C. § 2000e-5(e)(1) (charge to be filed within 180 days if filed with the EEOC or 300 days if filed with equivalent state or local agency).

burden of production, then the burden shifts back to the plaintiff to show "'by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Reeves*, 530 U.S. at 143 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). This final inquiry "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

BGE contends it is entitled to summary judgment. It argues, first, that Palmisano cannot establish two of the requisite four elements of a prima facie case of employment discrimination. Second, even if a prima facie case can be shown, BGE asserts it had a legitimate, nondiscriminatory reason for terminating Palmisano and he has brought forth no evidence of pretext. BGE concedes Palmisano has established the first and third elements of the prima facie case, i.e., that he is a member of a protected class and that his termination constitutes an adverse employment action. (Defs.' Mem. at 16.)

### A. *Prima Facie Case*

BGE argues Palmisano cannot establish the second and fourth elements of his prima facie case. Specifically, BGE contends Palmisano cannot show that he was meeting his job expectations or that similarly situated employees were treated differently. BGE does not contest that Palmisano was technically competent to perform his job and acknowledged that much in an employee deposition supporting its motion for summary judgment. (*See* LeSavage Dep. 9:6-8, Apr. 15, 2010.) However, it objects to Palmisano's assertion that he was meeting job expectations when he "wantonly disregarded" BGE's electronic communications policy in a manner that, it believes, reflected poorly on the company. (Defs.' Mot. Summ. J. at 17.) BGE points out that Palmisano admitted he used the computer for an excessive number of personal e-mail messages between Doe and him with "very inappropriate language and innuendos."

5

(Palmisano Dep. 132:17—133:7.) Palmisano also admitted that he had sent a sexually explicit e-mail from his BGE account to someone outside of the company (*id.* 106:16—109:2); that message included his electronic signature showing his position's title and the company name (Defs.' Mot. Summ. J. Ex. 17). Furthermore, BGE says it holds its supervisors to a higher standard of conduct than its nonsupervisory employees. (Decl. Shipley ¶ 16.) Because it appears that Palmisano was meeting his employer's legitimate expectations, however, prior to the discovery of the conduct that resulted in his termination, the court will assume, without deciding, that he has satisfied the second element of his prima facie case.

BGE also contends that Palmisano has failed to show he is "similarly situated" to other employees who were not terminated for their conduct. The only comparator named in Palmisano's complaint was Doe (Compl. ¶¶ 21-22, 26-27, 37-38), who is also the sole comparator named in Palmisano's response to BGE's motion for summary judgment (Pl.'s Resp. at 16, 20-22). BGE has included in its supporting memorandum a discussion pertaining to two other individuals who had been named by Palmisano in his deposition as similarly situated individuals (Defs.' Mem. at 10, 12-13), but since Palmisano does not press any argument pertaining to these two other comparators, the court considers that line of argument abandoned.

BGE contends that Doe is not similarly situated to Palmisano. Doe was not a supervisor and Palmisano was. She had some oversight responsibilities for three employees, but she had no authority to hire, discipline, or fire anyone. (Decl. Campo ¶ 7.) In contrast, Palmisano possessed supervisory powers for at least twenty-seven employees and was charged with their hiring and training, management of their day-to-day activities, performance reviews, coaching and counseling, discipline, and termination. (Palmisano Dep. 30:1-11, 31:11-13, 32:7-10, 33:8—34:1.) Moreover, even though Doe's e-mail messages did not conform to the company's policy, her misuse differed in two significant respects. First, Palmisano sent a sexually explicit e-mail

6

message to someone outside the company and the message was clearly marked as originating from BGE. Second, Palmisano had received an earlier warning about sexually explicit e-mail messages being an improper and unacceptable use of the company's e-mail system. (Palmisano Dep. Ex. 1.)[3]

Another judge in this District recently has had occasion to consider whether two employees may be considered similarly situated. In *Popo v. Giant Foods LLC*, 675 F. Supp. 2d 583 (D. Md. 2009), the court stated,

> Similarly situated employees are alike "with respect to performance, qualifications, and conduct." Generally, the compared employees must have dealt with the same decision-maker and engaged in conduct of comparable seriousness. A supervisor and his subordinates are, by definition, not alike in qualifications. "[A]n employee need not show complete identity in comparing himself to the better treated employee, but he must show substantial similarity."

*Id.* at 589 (citations and footnotes omitted) (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617, 618 (7th Cir. 2000). *See also Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532-33 (7th Cir. 2003) (declining to consider supervisory employee and nonsupervisory employee as similarly situated); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) ("[T]o be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it").

The court agrees that Palmisano has failed to show that he was similarly situated to Doe. The record reflects significant differences in their position and responsibilities. In addition, Palmisano's prior disciplinary history, his level of expected knowledge of the company's electronic communications policy, and his e-mail message that went outside the company and

---

[3] The court also observes that, in terms of sheer quantity, Palmisano's messages to Doe numbered approximately 15,000 over the six-month period preceding Palmisano's termination, while Doe's messages to Palmisano numbered roughly 500. (Decl. Bender ¶ 14.)

exposed BGE to embarrassment distinguish him from Doe. Accordingly, Palmisano has not set forth a prima facie case of employment discrimination.

### B. *Legitimate, Nondiscriminatory Reason for Termination – No Pretext*

Even if Palmisano had established a prima facie case, he would not prevail because BGE has proffered a legitimate, nondiscriminatory reason for terminating Palmisano's employment; BGE reasonably distinguished between Palmisano's and Doe's respective situations in meting out discipline, as noted in the preceding discussion of whether the two employees were similarly situated. Further, Palmisano has provided no persuasive evidence that BGE's reasons for his termination were pretextual. His argument regarding pretext appears to be based upon his underlying contentions that he was dealt with more harshly than Doe because of discrimination and that his prior disciplinary warning in 2003 regarding the electronic communications policy should have been purged from his file because of its age. The first contention already has been determined to be without merit. The second contention, even if it were so, does not erase all of the other distinctions BGE legitimately drew between Palmisano and Doe in making its decision to terminate him.

### IV. Conclusion

For the reasons stated above, the court will, by separate order, grant summary judgment for the defendants and deny summary judgment for the plaintiff.

Dated: October 18, 2010                               /s/
                                                      Catherine C. Blake
                                                      United States District Judge